IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.M., a Minor, by TINA, SOTTOSANTI-MACK, Guardian, Petitioner, | CIVIL ACTION |
| v. | NO. 17-1553 |
| EASTON AREA SCHOOL DISTRICT And E.J. a Minor, Defendants. | |

# **M E M O R A N D U M**

**STENGEL, C.J.**                                                                                                         December 21, 2017

This case involves the alleged assault and battery of a fifth grade student, D.M., in Easton Area School District. Plaintiffs allege D.M. was punched in the chest and jabbed in the cheek with a pencil by E.J., another fifth grade student. (Am. Compl. ¶ ¶ 9, 11.) Plaintiffs assert four claims against E.J.—battery, assault, outrageous conduct causing severe emotional distress, and false imprisonment. (See Am. Compl.) They assert a fifth cause of action against the School District, alleging a violation of the constitutional right to bodily integrity. (Am. Compl. ¶45-52.) The School District moves to dismiss this fifth cause of action. (Doc. No. 3.) Plaintiffs opposed the School District's motion. (Doc. No. 4.)

**I.**    **Background[1]**

During the relevant period, plaintiff D.M. and Defendant E.J. were fifth grade

---

[1] The Factual allegations in this section are taken from the amended complaint, unless otherwise noted. (See Am. Compl.)

1

students in the Easton Area School District attending Easton Area Middle School.[2] E.J. had a number of psychological, emotional, and developmental issues, which E.J.'s mother made public when she addressed the United States Committee on Health, Education, Labor, and Pensions during a 2012 hearing.[3]

In January 2014, E.J. punched D.M. and another fifth grade student in their chests when they told E.J. that he should stop teasing a younger student who suffered from autism.[4] A written report memorializing this incident was submitted to school district administrative personnel.[5]

On April 1, 2014, E.J. demanded that D.M. give him a pencil.[6] After D.M. refused, E.J. seized D.M.'s pencil and jabbed him in the cheek.[7] A written report of the incident was submitted on behalf of D.M.[8]

## II. Procedural History

Plaintiffs filed an initial complaint in the Court of Common Pleas of Northampton County, Civil Division on February 17, 2017.[9] On March 27, 2017, plaintiffs filed an amended complaint.[10] Defendant removed this matter to the United States District Court, Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441, 1446.[11] Removal was

---

[2] Am. Compl. ¶3.
[3] Am. Compl. ¶5 (citing Statement of Debbie Jackson, Parent, Before the Senate on Health, Education, Labor and Pensions: "Beyond Seclusion and Restraint: Creating Positive Learning Environments for All Students" http://www.help.senate.gov/imo/media/doc/Jackson5.pdf) (last visited December 11, 2017). This public address included information about E.J.'s behavioral disorders.
[4] Am. Compl. ¶9.
[5] Id.
[6] Id. at ¶10.
[7] Id. at ¶11.
[8] Id. at ¶12.
[9] Doc. No. 1.
[10] See Am. Compl.
[11] Doc. No. 1.

based on count five of the amended complaint, alleging a violation of 42 U.S.C. § 1983.[12] This Court has original jurisdiction over the action under 28 U.S.C. § 1331.

On April 25, 2017, defendant School District moved to dismiss count five for failure to state a claim.[13] On May 10, 2017, plaintiffs filed their brief in opposition.[14]

**III.   Standard**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To sustain this challenge, the factual allegations in the complaint must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Conclusory allegations are insufficient to support a facially plausible claim; the facts asserted must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

When presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may

---
[12] Id.
[13] Doc. No. 3.
[14] Doc. No. 4.

3

disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679; see also Phillips, 515 F.3d at 232-34 (holding that: (1) factual allegations of a complaint must provide notice to the defendant; (2) the complaint must allege facts indicative of the proscribed conduct; and (3) the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555) (alterations in original)).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need not contain detailed factual allegations, but must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Twombly, 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

## IV. Discussion

Plaintiffs' amended complaint asserts that the School District violated D.M.'s constitutional right to bodily integrity under 42 U.S.C. §§ 1983, 1988. (Am. Compl. ¶¶45-52.) Plaintiffs allege that D.M. was a member of a discrete class of persons,

4

students at Easton Area Middle School, subjected to potential harm by the School District's actions. (Id. at ¶ 46.) Plaintiffs submit that the School District violated the due process clause of the Fourteenth Amendment in concealing, tolerating, and trivializing repeated violence by students. Plaintiffs allege the School district intentionally and/or recklessly failed to report repeated incidents of violence and knowingly permitted defendant to remain on school premises. The School District moves to dismiss count five of the amended complaint for failure to state a claim under Rule 12(b)(6).

To state a claim under 42 U.S.C. §1983,[15] a plaintiff must show that the defendant "acting under the color of state law, deprived him of a right secured by the Constitution or the laws of the United States." Morse v. Lower Merion School Dist., 132 F. 3d 902, 907 (3d Cir. 1997) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds)). Generally, the Fourteenth Amendment's due process clause does not impose a duty on the state to protect. DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989). Two exceptions to this general rule are (a) the "special relationship" exception and (b) the "state-created danger" exception. Morse, 132 F.3d at 907. Plaintiffs fail to demonstrate that either exception is applicable. Plaintiffs also fail to demonstrate municipal liability arising from a policy or custom, or lack thereof, under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). For the reasons discussed below, I find that plaintiffs are not entitled to relief under § 1983 and count five of the

---

[15] §1983 provides:
> Every person who, under color or any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress . . . .

5

amended complaint is dismissed.

### A. The "special relationship" exception is inapplicable.

The special relationship exception allows a plaintiff to recover under § 1983 "when the state enters into a special relationship with a particular citizen . . . [and] fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1369 (3d Cir. 1992) (en banc) cert. denied, 506 U.S. 1118 (1996). The Supreme Court has held that the special relationship exception applies to "incarcerated or involuntarily committed citizens." See Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013). The state's duty to protect arises from "the State's affirmative act of restraining an individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty," which triggers due process protections. Id. at 168 (citing DeShaney. 489 U.S. at 200).

The Third Circuit has consistently held that a special relationship does not exist between a school and its students. D.R., 972 F.2d at 1369 (reasoning that the state must have exclusive physical custody to establish a special relationship with an individual); Morrow, 719 F.3d at 170 ("[P]ublic schools, as a general matter, do not have a constitutional duty to protect students from private actors."); Nicini v. Morra, 212 F.3d 798, 807-08 (3d Cir. 2000); see also Veronia School District 47J v. Acton, 515 U.S. 646 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional duty to protect.") (dicta) (internal citations and quotations omitted).

D.M.'s compulsory school attendance does not qualify as a "special relationship." See D.R., 972 F.2d at 1369; Gremo v. Karlin, 363 F. Supp. 2d 771, 782 (E.D. Pa. 2005). Whether plaintiffs are entitled to relief under § 1983 therefore turns on whether the "state-created danger" exception applies.

**B. The "state-created danger" exception is inapplicable.**

Pursuant to the "state-created danger" exception, a state actor may be liable under the Fourteenth Amendment's due process clause where the state authority injures a citizen or renders a citizen "more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).

A plaintiff attempting to avail himself of the "state-created danger" exception must plead four elements to survive a motion to dismiss:

1. The harm ultimately caused was foreseeable and fairly direct;
2. A state actor acted with a degree of culpability that shocks the conscience;
3. A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
4. A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Henry v. City of Erie, 728 F.3d 275, 282 (3d Cir. 2013). The failure to plead any one of these four elements defeats a plaintiff's state-created danger claim. Gayeman v. Sch. Dist. of the City of Allentown, No. 14-cv-1518, 2016 WL 3014896, at *4 (E.D. Pa. May 26, 2016) (citing Morse, 132 F.3d at 914).

7

*1. The harm was not foreseeable or fairly direct.*

"Under Third Circuit jurisprudence, a harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances the risk of harm." Gremo, 363 F. Supp. 2d at 784. In Gremo, the plaintiff, a high school student, was attacked by approximately fifteen students when they threw a garment over his head and repeatedly punched and kicked him. Id. at 777-78. Plaintiff argued that he was entitled to relief under § 1983 based on the "state-created danger" exception. The Court held that the harm was foreseeable because "the state actors had actual awareness based on concrete information that was sufficient to amount to notice that the individual defendants' omissions and commissions would enhance the risk of harm to [plaintiff]." Id. at 786. The defendants in Gremo were aware of "repeated actual attacks" and "knew of violent incidents by the same group of students that repeatedly occurred in the same manner, and in the same locations." Id.

In contrast, in Gayemen, the court held that the risk of harm was not foreseeable.[16] 2016 WL 3014896, at *6. The plaintiff was a student at the high school for only a few days when he was assaulted by four other students. Id. at *2. Although there was some evidence that the defendants were associated with a street gang, testimony from several teachers/administrators demonstrated that they had no knowledge of this fact. Id. at *6.

---

[16] The Court in Gayemen was tasked with deciding a motion for summary judgment, "which sets a lower bar for the nonmoving party than a motion to dismiss." Gayemen, 2016 WL 3014896, at *6. Notwithstanding the procedural posture, the court's analysis remains instructive to the foreseeability prong.

The court held that regardless of potential "gang involvement," plaintiff's assault was not foreseeable. Id. There was no prior contact, violence, or threats exchanged between the plaintiff and defendants. Id. Likewise, there was no evidence that the defendants had assaulted anyone else in the school. Id. The court concluded that "[t]here was simply no indication that [plaintiff] would be more likely to be harmed." Id.

Here, although these facts fall somewhere between those of Gremo and Gayemen,[17] I find that the harm was not foreseeable. The alleged prior attacks by E.J. were sporadic in time and place and used different methods. These prior incidents did not create actual awareness that D.M. was at an increased risk of harm due to the School District's actions. These facts simply do not rise to the level of foreseeability contemplated by the Third Circuit.[18] See Mohammad v. Sch. Dist. of Phila., 335 F. Supp. 2d 799, 784 (E.D. Pa. 2005) aff'd, 196 Fed. Appx. 79 (3d Cir. 2006) ("The cases in which the courts have found this element satisfied generally involve situations where a specific harm to a specific person was foreseeable.").

Even if the harm were foreseeable, plaintiffs fail to plead that the harm was a "fairly direct" result of the School District's affirmative acts. A plaintiff must plead that the "state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." Henry, 728 F.3d at 285 (quoting Morse, 132 F.3d at 910). "[I]t is insufficient to plead that state officials' actions took place somewhere along the causal

---

[17] Unlike in Gayemen, E.J. had a history of violence, including an incident in January 2014 when E.J. punched D.M. in the chest. What is more, plaintiffs submit that the School District received written reports that E.J. assaulted five classmates, including D.M., during the fall 2013 semester.
[18] Plaintiff submits that the School District had actual notice because E.J.'s mother testified publicly regarding his behavioral and emotional disorders. Such testimony does not create actual notice that D.M. was at an increased risk of harm.

chain that ultimately led to the plaintiff's harm." Henry, 728 F.3d at 285. To survive a motion to dismiss, a plaintiff must demonstrate that the "school officials affirmatively acted to create a danger notwithstanding their knowledge of dangerous conditions." Pagan v. City of Philadelphia, No. 11-cv-5178, 2012 WL 1965386, at *7 (E.D. Pa. May 31, 2012) (quoting Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006)).

Here, plaintiffs fail to plead that the School District's actions precipitated E.J.'s harm.[19] Plaintiffs' complaint states generally that the School District concealed violent incidents. (Am. Compl. ¶ 48.) Contrary to this conclusory allegation, the School District prepared written reports that E.J. assaulted five classmates, including the January and April incidents that involved D.M. Cf. Gremo, 363 F. Supp. 2d at 787-88 ("It is reasonable to infer from the amended complaint that the fifteen students in this case were encouraged by the defendants' concealment and under-reporting of the violent assaults . . . the defendants' decision to conceal the attacks may have been perceived as an implicit condonation . . . ."). Plaintiffs fail to demonstrate concealment by the School District or any other affirmative act that precipitated D.M.'s harm.[20]

Therefore, the harm was neither foreseeable nor a fairly direct result of the School District's affirmative actions.

---

[19] Plaintiffs did not oppose this portion of the School District's motion.
[20] The amended complaint includes a claim that the School District failed to punish, isolate and/or remove known violent students. This claim is without merit. A school district's decision not to expel or punish a student is not an affirmative act. Brown v. Sch. Dist. of Philadelphia, 456 F. App'x 88, 91 (3d Cir. 2011).

10

> 2. *The School District did not act with a degree of culpability that shocks the conscience.*

The second element asks "whether the state actor acted with willful disregard for or deliberate indifference to plaintiff's safety." Morse, 132 F.2d at 910. This standard requires a "willingness to ignore a foreseeable danger or risk." Id. It necessarily follows that as threshold matter, the danger must be foreseeable to demonstrate deliberate indifference. Id.

Plaintiffs fail to plead that the School District acted with a degree of culpability that shocks the conscience. As discussed above, the sporadic incidents involving E.J. did not give rise to a foreseeable danger or risk of harm to D.M. Even if the risk of harm were foreseeable, the School District did not act with deliberate indifference to D.M.'s safety. In fact, the School District reported both incidents involving D.M. Cf. Gremo, 363 F. Supp. 2d at 787-88 (stating that the school district "acted with deliberate indifference when they concealed the attacks and failed to address the unmonitored common areas that were commonly the sites of the attacks."). The fact that the School District allegedly "put E.J. in proximity to and contact with D.M." does not amount to willful disregard for D.M.'s safety. At most, these actions amount to negligence, which is insufficient to support a claim under § 1983. Morse, 132 F.3d at 911 ("merely negligent acts cannot support a claim under the state-created danger theory of § 1983."). Therefore, I find that the School District did not act with deliberate indifference.[21]

---

[21] Plaintiffs submit that the School District acted with deliberate indifference because the disciplinary decisions were "made and sustained over twenty-five months." Doc. No. 4 at 10. The deliberate indifference standard "is limited to those instances when actual deliberation is

11

*3. A relationship existed between the School District and D.M.*

The third element asks whether there is "some relationship" between the state actor and the plaintiff. Morse, 132 F.3d at 912. This element is distinguishable from the "special relationship" exception discussed in section (A). The relationship requirement of the state-created danger analysis "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." Id. A victim is not foreseeable and the relationship element is not satisfied when the state actor creates a threat only to the general population. Id. (quoting Kneipp v. Tedder, 95 F.3d 1199, 1209 n.22 (3d Cir. 1997)). The relationship element is satisfied, however, "if the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." Id. at 914.

Here, D.M. was a member of a discrete class of persons, Easton Area Middle School students, and subjected to potential harm brought about by the state's actions. E.J. was not a threat to the population at large but was a threat to fellow students. Gayemen, 2016 WL 3014896, at *9 ("This Court . . . concludes that [plaintiff's] attendance at Allen [High School] constituted a relationship between him and the School District such that he would be a foreseeable victim of an alleged danger created by the School District.") (citing Smith v. Sch. Dist. of Pa., No. 07-cv-2080, 2009 WL 667455, at *5 (E.D. Pa. Mar. 10, 2009)); Gremo, 363 F. Supp. at 789 (same conclusion).

---

practical . . . deliberate indifference is not sufficient to shock the conscience in situations requiring the state actors to act with some urgency . . . .") Gremo, 363 F. Supp. 2d at 788 (internal citations and quotations omitted). Plaintiffs are correct that these facts did not require the School District to act with urgency and that actual deliberation was practical. Plaintiffs' argument fails because the School District did not act with deliberate indifference.

12

Therefore, a relationship existed between the School District and D.M.

*4. Plaintiffs fail to plead that the School District affirmatively used its authority in a way that created a danger to D.M. or that rendered D.M. more vulnerable to danger than had the School District not acted at all.*

Even if plaintiffs properly pled the first three elements, they plainly fail to demonstrate the fourth prong of the state-created danger exception, which requires an affirmative act by the state. The fourth prong requires "an allegation and subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282 (reasoning that "[i]t is the misuse of state authority rather than a failure to use it, that can violate the Due Process Clause."). The theory is "predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." Id. at 281-82 (emphasis in original) (citing D.R., 972 F.2d at 1374 (en banc) and Brown v. Grabowski, 992 F.2d 1097, 1100-01 (3d Cir. 1990)). A plaintiff's complaint that merely recharacterizes "passive inaction as affirmative acts" is insufficient to plead the fourth element of the state-created danger exception. Morrow, 719 F.3d at 178 (citing Sanford, 456 F.3d at 311-12).

Here, plaintiffs' complaint fails to plead an affirmative act by the School District. Instead, plaintiffs attempt to couch inaction as an affirmative act. For instance, plaintiffs allege that the School District "exercised its discretion to permit E.J. to remain in school after each altercation." (Doc. No. 4 at 16.) Plaintiffs submit that the School District's "decision to decline enforcement of the Disciplinary Code against E.J. . . . put D.M. at a heightened risk of harm." (Id.) Such inaction is insufficient to plead the fourth element of

13

the "state-created danger" exception.[22] Morrow, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here."); Gayeman, 2016 WL 3014896 at * 11 ("[Plaintiff] unsuccessfully seeks to couch an act of omission – failure to suspend or expel student offenders, failure to discipline – as affirmative acts."). The School District's lack of action is fatal to plaintiffs' § 1983 claim.

I find that plaintiffs fail to plead an affirmative act by the School District that rendered D.M. more vulnerable to danger. Therefore, the "state-created danger" exception is inapplicable, and count five of the plaintiffs' complaint is dismissed.

**C. Plaintiffs' complaint fails to plead a § 1983 claim of municipal liability arising from a policy or custom.**

Plaintiffs allege that the School District failed to implement a policy concerning safety and security measures and failed to train its employees. Construing the complaint in the light most favorable to plaintiffs, I will analyze this as a claim alleging municipality liability stemming from a policy or custom under § 1983.

In Monell, the U.S. Supreme Court held that § 1983 municipal liability arises where the municipality implements or enforces "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" an authorized decisionmaker of that municipality. 436 U.S. at 690.[23] The theory of respondeat superior

---

[22] To the extent plaintiffs allege the School District affirmatively concealed violent attacks by students including E.J., this claim is without merit. As discussed above, the evidence establishes that the School reported the violent incidents involving D.M.

[23] A plaintiff asserting that a municipality violated their constitutional rights under Monell may proceed along a "two-path track . . . depending on whether the allegation is based on municipal policy or custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). A "policy is

14

will not establish a violation under § 1983. Id. 691-95. The plaintiff must demonstrate that the "municipality itself supported the violation of rights alleged" through the implementation of a policy or custom. Andrews v. City of Philadelphia, 895 F. 2d 1469, 1480 (3d Cir. 1990); Monell, 436 U.S. at 692-95.

Under Monell, a municipality may only be vicariously liable for the torts of their employees under § 1983 in one of three ways:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity;
> (2) the individual himself has final policy-making authority such that his conduct represents official policy; or
> (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).[24]

To survive a motion to dismiss a plaintiff must plead "1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose moving force was the policy in question." Stevens v. Borough, No. 11-7216, 2013 WL

---

made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." Cummings v. City of Chester, Arthur Grenier, Civ. A. No. 15-4504, 2016 WL 304790, *3 (E.D. Pa. Jan. 26, 2016) (citing Mulholland v. Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013)). A municipal custom, on the other hand, "lacks the formal approval of a municipal policy" but consists of "such practices of state officials. . . .[as are] so permanent and well settled as to constitute a 'custom or usage' with the force of law." Glass v. City of Phila., 455 F. Supp. 2d 302, 341 (E.D. Pa. 2006) (citing Monell, 436 U.S. at 691). Under either track to municipal liability, by custom or policy, the plaintiff has the burden of showing that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settlement custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations omitted).

[24] Based on my review of the pleadings and the parties' briefs, only the first scenario outlined in Hill, supra, is applicable. Plaintiffs fail to identify an individual with policy-making authority who either committed the alleged unconstitutional act or ratified the unconstitutional actions of a subordinate. My analysis will focus only on the first scenario.

2292047, *3 (E.D. Pa May 23, 2013) (citing Monell, 436 U.S. at 694). "A plaintiff can establish causation by demonstrate[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572 (3d Cir. 2004) (citing Bd. of Cty. Comm'rs of Bryan Cty., Okla v. Brown, 520 U.S. 397, 403, 407 (1997) (internal quotations omitted) (brackets in original)). Causation is generally a question of fact for the jury. A.M. ex rel. J.M.K., 372 F.3d at 585 (citing Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

Conclusory allegations are insufficient to survive a motion to dismiss. McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2009) (holding that "conclusory and general" allegations "failed to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability.") (internal quotations omitted). "A complaint must include specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." Kelty v. City of Philadelphia, No. 16-0306, 2016 WL 8716437 at *4 (E.D. Pa. Jun. 6, 2016) (citing Torres v. City of Allentown, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. Jun. 30, 2008)).

Plaintiffs allege that the School District's lack of policy concerning security measures and the failure to train its employees caused the alleged constitutional violation. I will address each in turn.

1. *Plaintiffs' complaint fails to sufficiently plead that the School District's lack of policy concerning safety and security caused a constitutional violation.*

Plaintiffs' amended complaint contains several allegations concerning the School District's security measures, including the alleged lack of policies. (Am. Compl. ¶ 48(t)). Specifically, plaintiffs allege that the School District:

> (t) intentionally, recklessly, and/or in deliberate indifference to the continued acts of violence at certain problematic Easton Area School District schools, including Eason Area Middle School, the Easton Area School District failed to make any concerted effort to address the grave security and safety problems at such schools by:
> > (i) failing to adequately asses and/or remedy school building safety, in particular the wholly unsecured, unmonitored, security-abandoned, hallways and/or common areas;
> > (ii) failing to enhance or establish school personnel, including school resource officers and on-site police officers;
> > (iii) failing to implement and/or consistently enforce school codes of conduct and law enforcement reporting protocols and procedures to be followed for acts involving violence and/or weapons on school property;
> > . . .
> > (v) failing to implement school safety and violence prevention programs and/or curriculum that address risk-factors to reduce incidents of problem behaviors among students.

(Am. Compl. ¶ 48.)

Plaintiffs' allegations are insufficient to set forth a claim under Monell. Plaintiffs' conclusory allegations plead a general lack of policies concerning safety. The complaint is devoid of factual allegations identifying the specific policy[25] or policy-maker. Cf.

---

[25] Although plaintiffs here face the challenge of proving a negative (lack of policy), courts have held that the absence of a policy may establish liability under Monell. For instance, in Stevens, the court held that plaintiff's amended complaint sufficiently pled municipal liability based on the lack of a policy. The court noted: "Whereas Plaintiff previously did not identify any offending policy, Plaintiff now alleges that the absence of a random drug testing policy and the [Municipality's] lack of policy to deal with officers on leave or who were improperly considered part-time were constitutionally deficient." 2013 WL 2292047, at *2 (internal quotations omitted)

Stevens, 2013 WL 2292047, *3 (citing Monell, 436 U.S. 658); see Kelty, 2016 WL 8716437 at *4 (citing McTernan v. City of York, PA, 564 F.3d 636, 658-59 (3d Cir. 2009) ("A complaint which neglects to allege conduct by a municipal decisionmaker cannot survive a motion to dismiss its Monell claim.") (internal quotations omitted)).

Likewise, although causation is generally a question of fact for the jury, here, the causal link is so tenuous that a reasonable jury could not find that the alleged lack of security policies caused a constitutional violation. I am hard-pressed to think of a scenario where the absence of a policy concerning security measures is the "moving force" behind one student's act of stabbing another in the cheek with a pencil. A.M. ex rel. J.M.K., 372 F.3d 572; Stevens, 2013 WL 2292047, *3.

Plaintiffs' Monell claim is nothing more than a naked assertion that D.M. suffered harm as a result of the School District. Therefore, count five is dismissed for failure to state a claim.

2. *Plaintiffs' complaint fails to sufficiently plead that the School District's alleged failure to train constituted a policy under Monell.*

"When a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such failure to train may itself constitute a policy or custom that is actionable under § 1983." Marable v. West Pottsgrove Tp., 176 Fed. Appx. 275, 283 (3d Cir. 2006) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989) (internal quotations omitted)). A finding of deliberate indifference generally requires that the deficient training "caused a pattern of violations,

---

(citing Wood v. City of Lancaster, No. 06-3033, 2009 WL 80306, at *20-21 (E.D. Pa. Jan. 13, 2009)).

and the need for more or different training is obvious and inadequacy is very likely to result in a violation of constitutional rights." Victory Outreach Ctr. v. Melso, 313 F. Supp. 2d 481, 493 (E.D. Pa. 2004) (citing Cavicchia v. Phila. Housing Auth., No. 03-0116, 2003 WL 22595210, at *13 (E.D. Pa. Nov. 7, 2003)). The failure to train must also closely relate to the plaintiff's injuries. A.M. ex rel. J.M.K., 372 F.3d at 582 (citing City of Canton, 489 U.S. at 391).

Plaintiffs fail to sufficiently plead municipal liability under § 1983 based on the failure to train. Plaintiffs' amended complaint contains several allegations that the School District failed to train school officials, administrators, and employees concerning security and safety. (Am. Compl. at ¶ 49 (iv), (v), (w) [sic].) The complaint relies on bald assertions and fails to identify prior misconduct caused by the alleged inadequate training.[26] The plaintiffs' pleadings are insufficient to survive a motion to dismiss on the § 1983 failure to train claim. See Kelty, No. 16-0306, 2016 WL 8716437, at *5 (E.D. Pa. Jun. 10, 2016) (declining to find municipal liability; reasoning that plaintiff "attempts to plead a failure-to-train claim with conclusory language that neglects to allege specific instances of prior misconduct by correctional officers."); see also Williams v. Borough of Sharon Hill, No. 12-5395, 2013 WL 4743471 (E.D. Pa. Sep. 4, 2013) (granting defendant's motion to dismiss because the complaint failed to "plead any fact to suggest a pattern of similar constitutional violations by untrained employees.").

---

[26] Although the complaint references prior violent incidents involving E.J., it fails to identify any misconduct by the School District, let alone misconduct that caused a pattern of constitutional violations.

Plaintiffs also fail to plead that the defendant's alleged failure to train was "closely related" to D.M.'s injuries. In fact, plaintiffs do not point to any conduct by the school administrators, employees, or any other agent of the School District that was related to the alleged constitutional violation. The School District may not incur <u>Monell</u> liability based on its failure to train where its administrators, employees, and/or agents have not inflicted a constitutional injury. <u>Marable</u>, 176 Fed. Appx. at 283.

I find that plaintiffs' complaint fails to meet the pleading standard for a § 1983 claim under <u>Monell</u>. The amended complaint is devoid of factual allegations that would support a claim of municipal liability based on the failure to train. Accordingly, the School District's motion to dismiss count five of the amended complaint alleging a § 1983 violation is granted, and the School District is dismissed as a defendant in this action.

## V. CONCLUSION

I find as a matter of law that plaintiffs' amended complaint fails to state a claim under § 1983 against the School District. The School District's motion to dismiss count five of the amended complaint is granted with prejudice.

An appropriate Order follows.